**TO: Clerk's Office**
    **UNITED STATES DISTRICT COURT**
    **EASTERN DISTRICT OF NEW YORK**



    **APPLICATION FOR LEAVE**
   **TO FILE DOCUMENT UNDER SEAL**

**********************************
IN RE: APPLICATION OF THE UNITED
STATES OF AMERICA FOR AN ARREST
WARRANT

              20-MJ-509
              Docket Number

**********************************

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✔
Name: _Andrew Wang_
Firm Name:USAO-EDNY
Address: ___271 Cadman Plaza East___
          Brooklyn, New York 11201
Phone Number: _718-254-6311_
E-Mail Address:_Andrew.Wang2@usdoj.gov_

INDICATE UPON THE PUBLIC DOCKET SHEET: YES____ NO ✔
**If yes, state description of document to be entered on docket sheet:**

_____

_____

_____

**A) If pursuant to a prior Court Order**:
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

**B) If a _new_ application,** the statute, regulation, or other legal basis that authorizes filing under seal

Ongoing criminal investigation; risk of flight and destruction of evidence
_____

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn         , NEW YORK
      July 7, 2020 _____/s Roanne L. Mann_____

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE July 7, 2020_____
                   DATE

**MANDATORY CERTIFICATION OF SERVICE**:
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

     July 7, 2020                  
       DATE              SIGNATURE

JN:ADW
F. #2020R00345

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

KEVIN JAY LIPSITZ,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED UNDER SEAL**

**COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT**

(18 U.S.C. § 1343; 50 U.S.C. §§ 4512 and 4513)

Docket No. 20-MJ-509

EASTERN DISTRICT OF NEW YORK, SS:

        ELIZABETH A. KUDIRKA, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        On or about and between March 1, 2020, and May 31, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN JAY LIPSITZ did knowingly and intentionally devise a scheme and artifice to defraud individual consumers, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds.

        (Title 18, United States Code, Section 1343)

On or about and between March 25, 2020, and May 31, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEVIN JAY LIPSITZ did knowingly, intentionally and willfully accumulate, for the purpose of resale at prices in excess of prevailing market prices, materials which had been designated by the President of the United States as scarce materials and materials the supply of which would be threatened by such accumulation, in violation of the Defense Production Act of 1950.

(Title 50, United States Code, Sections 4512 and 4513)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.      I am a Special Agent with the FBI and have been involved in the investigation of numerous cases related to wire fraud.   I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and from reports of other law enforcement officers involved in the investigation.

2.      The specific facts set forth below are based primarily on two sources of information: documents and records received from third parties pursuant to subpoena, and statements or materials provided to law enforcement by individuals.   For example, during the course of the investigation, the government has issued subpoenas for documents and records to major commercial shipping companies, an internet domain provider, a major

---

[1]  Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

national bank and online payment providers.    To the extent specific facts set forth below are based on records or documents, those records or documents were received by the government pursuant to the aforementioned subpoenas, unless otherwise noted.    Likewise, any facts concerning specific customers—i.e., Victims 1, 2 and 3 below—are based on interviews conducted with those individuals or documentary evidence voluntarily provided by those individuals to law enforcement, unless otherwise noted.

I.    The COVID-19 Outbreak and the Defense Production Act

3.    In December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), was first detected and subsequently caused outbreaks of the coronavirus disease, also known as "COVID-19," that have since spread globally.    On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States.    On March 11, 2020, the Director-General of the World Health Organization ("WHO") characterized COVID-19 as a pandemic.    On March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

4.    The Centers for Disease Control and Prevention ("CDC") has recommended that health care providers implement universal use of personal protective equipment ("PPE") to prevent the coronavirus from being transmitted by infected patients to healthcare providers, especially in facilities located in areas with moderate to substantial community transmission.[2]    The CDC began recommending that health care providers, as

---

[2]    See CDC, "Interim Infection Prevention and Control Recommendations for

well as emergency first responders and other individuals that may come into close contact

with persons infected by COVID-19, use PPE to prevent the spread of the coronavirus back

in early March 2020.

5.      As COVID-19 spread in the New York metropolitan area and across

the United States, it threatened to overwhelm hospitals and healthcare providers who were

required to care for rapidly increasing numbers of seriously ill patients with a rapidly

dwindling stock of PPE and other necessary health and medical resources.    Accordingly, on

March 18, 2020, the President of the United States issued Executive Order 13909, see 85

Fed. Reg. 16,227, invoking the powers vested in the President by the Defense Production Act

of 1950, 50 U.S.C. §§ 4501 et seq. (the "Act").

6.      The Act authorizes the President to, among other things, "allocate

materials, services, and facilities in such manner, upon such conditions, and to such extent as

he shall deem necessary or appropriate to promote the national defense."    50 U.S.C.

§ 4511(a)(2).    The President may exercise this authority "to control the general distribution

of any material in the civilian market" if the President finds "(1) that such material is a scarce

and critical material essential to the national defense, and (2) that the requirements of the

national defense for such material cannot otherwise be met without creating a significant

dislocation of the normal distribution of such material in the civilian market to such a degree

as to create appreciable hardship."    50 U.S.C. § 4511(b).

_____

Healthcare Personnel During the Coronavirus Disease 2019 (COVID-19) Pandemic,"
https://www.cdc.gov/coronavirus/2019-ncov/infection-control/control-recommendations.html
(last visited June 23, 2020).

7.	The Act further provides that "no person shall accumulate . . . for the purpose of resale at prices in excess of prevailing market prices, materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation."   50 U.S.C. § 4512.   The Act requires the President to publish in the Federal Register "every designation of materials the accumulation of which is unlawful and any withdrawal of such designation," and authorizes the President to "prescribe such conditions with respect to the accumulation of materials in excess of the reasonable demands of business, personal, or home consumption as he deems necessary to carry out the objectives of this chapter."   Id.

8.	On March 23, 2020, the President issued Executive Order 13910, see 85 Fed. Reg. 17,001, delegating to the Secretary of HHS the President's authority under 50 U.S.C. § 4512 to prevent the excess accumulation of certain health and medical resources. On March 25, 2020, pursuant to the authority delegated to him by the President pursuant to 50 U.S.C. § 4512, the Secretary of HHS published a notice, see 85 Fed. Reg. 17592, designating the following health and medical resources under the Act as scarce materials or materials the supply of which would be threatened by accumulation in excess of reasonable demands of business, personal, or home consumption, or for the purpose of resale at prices in excess of prevailing market prices:

    a.	N-95 Filtering Facepiece Respirators;

    b.	Other Filtering Facepiece Respirators (e.g., those designated as N99, N100, R95, R99, R100, or P95, P99, P100);

    c.	Elastomeric, air-purifying respirators and appropriate particulate filters/cartridges;

    d.	Powered Air Purifying Respirator (PAPR);

e. Portable Ventilators;

f. Chloroquine phosphate or hydroxychloroquine HCl;

g. Sterilization services for certain medical devices and certain sterilizers;

h. Disinfecting devices and other sanitizing and disinfecting products suitable for use in a clinical setting;

i. Medical gowns or apparel, e.g., surgical gowns or isolation gowns;

j. Personal protective equipment (PPE) coveralls, e.g., Tyvek Suits;

k. PPE face masks;

l. PPE surgical masks;

m. PPE face shields;

n. PPE gloves or surgical gloves; and

o. Ventilators, anesthesia gas machines modified for use as ventilators, and positive pressure breathing devices modified for use as ventilators, ventilator tubing connectors, and ventilator accessories.

9. "N-95" is a designation assigned to certain types of filtering facepiece respirators that are manufactured and sold in the United States. An N-95 respirator is designed to achieve a very close facial fit and filter out at least 95% of airborne particles, including bacteria and viruses. By contrast, a disposable surgical facemask is loose-fitting and helps to block large-particle droplets, splashes, sprays or splatter that may contain contaminants, but a surgical facemask does not filter or block very small airborne particles. The CDC has recommended that health care workers use N-95 filtering facepiece respirators

in hospitals and other medical treatment environments, especially when conducting

procedures that may produce aerosols.[3]

      10.    The Defense Production Act makes the willful performance of any act

prohibited by § 4512, "or any rule, regulation or order thereunder," a crime punishable by a

fine of not more than $10,000 or imprisonment for not more than one year.  50 U.S.C.

§ 4513.  Accordingly, willfully accumulating designated scarce or threatened materials

either (1) in excess of the reasonable demands of business, personal, or home consumption,

or (2) for the purpose of resale at prices in excess of prevailing market prices, is a criminal

offense.

## II.    <u>The Defendant and His Company</u>

      11.    The defendant KEVIN JAY LIPSITZ is the Chief Executive Officer

and apparent sole owner of SuperGoodDeals.com Inc. ("SGD"), a New York domestic

corporation that has been operating in Richmond County, New York since 2007.  LIPSITZ

and SGD sell merchandise directly to consumers through a website that bears the URL

www.supergooddeals.com (the "Website") and offers a large variety of items such as

clothing, electronics, bathroom products and home goods, most of which appear to be

unbranded and/or generic versions of common household items.  SGD's business address is

---

[3] A "KN-95" is a filtering facepiece respirator designation that is assigned by the People's Republic of China ("PRC").  In sum and substance, a KN-95 respirator is similar to an N-95 respirator in form and function, but evaluated based upon its compliance with PRC regulatory standards.  Prior to the COVID-19 pandemic, KN-95 respirators were not authorized for importation into or sale within the United States.  As a result of the COVID-19 pandemic, however, some varieties of KN-95 respirators have been approved for importation.  Even those that have not been approved for importation qualify as either a filtering facepiece respirator and/or "PPE facemask" under the terms of 85 Fed. Reg. 17592.

550 Manor Road in Staten Island, New York, which is also the return address specified on the packaging in which items are shipped to the company's customers.

III.     The Defendant's Accumulation of Scarce and Threatened Materials

12.     Prior to February 2020, the defendant KEVIN JAY LIPSITZ and SGD do not appear to have acquired, marketed or sold PPE in their normal course of business. However, between approximately February 1, 2020, and May 31, 2020, LIPSITZ and SGD accumulated PPE and other health and medical resources, some of which had been designated as scarce and threatened materials by the Secretary of HHS.

13.     In or about February 2020, the defendant KEVIN JAY LIPSITZ purchased more than 16,000 disposable surgical facemasks from sellers on an e-commerce website (hereinafter the "E-commerce Website"), an online commerce platform that allows individuals to purchase items from third parties either by placing a winning bid in an auction or agreeing to pay a fixed "Buy It Now" price set by the seller.    Between late February 2020 and early April 2020, LIPSITZ also purchased or attempted to purchase more than 600,000 disposable surgical facemasks from third parties.    Between early March 2020 and mid-May 2020, LIPSITZ purchased more than 7,000 N-95 filtering facepiece respirators and more than 6,000 KN-95 filtering facepiece respirators from third parties on the E-commerce Website or elsewhere.[4]

14.     For example, on March 31, 2020, the defendant KEVIN JAY LIPSITZ purchased 2000 3M-branded Model 8210 N-95 filtering facepiece respirators from a third

---

[4]  Any facts stated herein regarding the defendant KEVIN JAY LIPSITZ's purchase or sale of items on the E-Commerce Website are based on my review of records received from the E-Commerce Website.

party on the E-commerce Website, paying $12,600 in total at an average price of $6.30 per unit.   On May 11, 2020, LIPSITZ purchased 100 3M-branded Model 8210 N-95 filtering facepiece respirators from a third party on the E-commerce Website, paying $1,035 in total at an average price of $10.35 per unit.

15.    In connection with SGD's business, the defendant KEVIN JAY LIPSITZ used off-site warehouse space located at 7 Arden Avenue in Staten Island, New York (the "Warehouse").   Upon information and belief, including documentary evidence and witness testimony, LIPSITZ has been storing at least several hundred thousand disposable surgical facemasks at the Warehouse.

16.    The defendant KEVIN JAY LIPSITZ advertised for sale on the Website several different models of N-95 filtering facepiece respirators, KN-95 filtering facepiece respirators, disposable surgical facemasks and PPE face shields, all of which had been designated as scarce and threatened materials by the Secretary of HHS.    For example, 3M-branded Model 8210 N-95 filtering facepiece respirators were advertised for $19.95 each on the Website, as shown in the following image from the Website:



LIPSITZ also sold 3M-branded Model 8210 Plus N-95 filtering facepiece respirators through the Website, advertising them for $21.95 per unit.    3M has provided information that the list price for Model 8210 N-95 filtering facepiece respirators in the United States was between $1.02 and $1.31 per unit.    And according to 3M, the list price for the Model 8210 Plus N-95 filtering facepiece respirator was between $1.18 and $1.50 per unit.    See 3M "Fraudulent Activity, Price Gouging, and Counterfeit Products," (May 18, 2020), available at https://multimedia.3m.com/mws/media/1803670O/fraudulent-activity-price-gouging-and-counterfeit-products.pdf.    The prices that LIPSITZ and SGD advertised for the Model 8210 and Model 8210 Plus N-95 filtering facepiece respirators represented markups from the official list prices of more than 1400% and 1300%, respectively.

17.    In addition, since at least April 8, 2020, the Website's home page has prominently displayed a banner depicting PPE.    Upon clicking the banner, an individual is directed to a product page listing different types of PPE for sale, as shown in the following image from the Website:

 

IV.    The Defendant's Price-Gouging of Scarce and Threatened Materials

18.    Between approximately March 1, 2020, and May 31, 2020, the defendant KEVIN JAY LIPSITZ resold the PPE and other health and medical resources he had accumulated—some of which had been designated as scarce and threatened materials by the Secretary of HHS—at prices in excess of prevailing market prices.    For example,

information listed on the Website, records received from online payment processors, records from shipping companies and information received from customers who purchased PPE from the Website reflect that during this time period:

a.  Based on records received from the E-Commerce Website, LIPSITZ obtained 3M-branded Model 8210 and Model 8210 Plus N-95 filtering facepiece respirators for an average per-unit cost of $7.82.  On the Website, LIPSITZ typically resold these respirators for a per-unit price of between $19.95 and $21.95—a markup of approximately 155% to 180% above what he paid for the respirators.  For example, on or about April 6, 2020, LIPSITZ sold 300 3M N-95 Model 8210 Plus N-95 respirators to a customer for $6,585, at a per-unit price of $21.95.  Similarly, on or about April 8, 2020, LIPSITZ sold seven 3M Model 8210 N-95 respirators to a customer for $79.80, at a per-unit price of $19.95.

b.  As noted above, while KN-95 respirators were generally not authorized for importation and sale in the United States before the COVID-19 pandemic, I am aware that generic KN-95 respirators generally sell for prices lower than those for N-95 respirators manufactured by U.S.-based manufacturers such as 3M.  Based on records received from the E-Commerce Website, LIPSITZ obtained generic KN-95 filtering facepiece respirators for an average per-unit cost of $2.00.  On the Website, LIPSITZ typically resold these respirators for a per-unit price of $12.95—a markup of approximately 547% above what he paid for the respirators.  For example, on or about April 6, 2020, LIPSITZ sold 20 generic KN-95 respirators to a customer for $259.00, at a per-unit price of $12.95.

c. Based on records received from the E-Commerce Website and online payment processors, LIPSITZ obtained disposable surgical facemasks for an average per-unit cost of $0.27 to $0.38. On the Website, LIPSITZ typically resold these masks for a per-unit price of $0.76—a markup of approximately 100% to 180% above what he paid for the facemasks. For example, on or about April 3, 2020, LIPSITZ sold 1,000 disposable surgical facemasks to a customer for $762.30, at a per-unit price of $0.76.

19. In addition to selling PPE through the Website, the defendant KEVIN JAY LIPSITZ also sold PPE directly to consumers through websites that aggregate and provide links to "deals" (i.e., sales or coupons) for products sold on other websites ("aggregator websites"), as well as through listings on the E-commerce Website.

V.    The Defendant's Scheme to Defraud Consumers

20. As the number of COVID-19 cases grew in the United States, the defendant KEVIN JAY LIPSITZ took advantage of nationwide public demand for PPE not only by selling PPE at prices far in excess of the prevailing market, but also by making misrepresentations regarding SGD's inventory of PPE and its ability to ship PPE quickly.

21. One of the Website's prominent selling points was free and fast shipping. Specifically, the Website featured banners that advertised "FREE SHIPPING for all shipments ANYWHERE in the USA" and "Pay Today, Ships Tomorrow." The Website had a "Shipping & Deliveries" page that stated the following: "We ship from the USA and are located in Staten Island, New York. We ship worldwide. We pride ourselves on fast order processing. Pay Today, Ships Tomorrow! [. . .] All orders come with free tracking numbers and insurance, which is emailed to you at time of shipment. [. . .] Whether you choose our FREE standard shipping or one of the optional upgrades, your order will ship

tomorrow, if paid today (unless tomorrow is a Sunday or a postal holiday, then it will ship the following business day."   The foregoing statements or similar statements appear to have been consistently displayed on the Website during the relevant time period, and continue to be displayed as of the date of this affidavit.

22.    The Website's promise of next-day shipping applied to its listings for PPE.   For example, as depicted in the images above, the Website's listings for disposable surgical facemasks, N-95 filtering facepiece respirators and KN-95 filtering facepiece respirators all included claims that the products were in stock and used the phrase "pay today, ships tomorrow."

23.    The defendant KEVIN JAY LIPSITZ knew these misrepresentations were false and made them as part of a scheme to convince consumers to pay him money for the "fast shipping" falsely described on the Website, and further publicized on aggregator websites and the E-commerce Website.   Based in part on these false representations, records received from online payment processors show that in March and April 2020, through the Website, the aggregator websites and the E-commerce Website, LIPSITZ obtained more than $180,000 from victims, for whom "fast turnaround" was significant to their decisions to purchase PPE from LIPSITZ.

24.    Further to his misrepresentations that PPE would ship the day after payment, and based on the FBI's interviews of customers, the defendant KEVIN JAY LIPSITZ consistently sent "shipping confirmation" emails to customers on the same day or the day after said customers placed orders with the Website and made payment.   The shipping confirmation emails included tracking numbers that customers could purportedly use to monitor the shipping progress and estimated delivery time for the PPE that they

ordered.    However, as described below, LIPSITZ frequently did not ship PPE ordered

through the Website until several weeks after the original order date.

      25.    Despite consistently promising that SGD could ship PPE the day after

payment—a pretense that defendant KEVIN JAY LIPSITZ bolstered by emailing tracking

numbers to customers soon after they placed orders— LIPSITZ often did not ship PPE until

weeks after the fact.    For instance, records received from the United States Postal Service

("USPS")[5]  show that although the Website received more than 200 orders for fast-shipping

PPE from customers across the United States between March 27, 2020, and April 10, 2020,

the USPS did not receive from LIPSITZ the shipments for approximately 170 of those orders

until three weeks or longer after the original order date.    Those same records demonstrate

that in some instances, LIPSITZ did not send PPE ordered from the Website until more than

five weeks after the order date.

      26.    The defendant KEVIN JAY LIPSITZ's practice of fraudulently

marketing PPE to customers through promises of speedy delivery extended to both small and

large orders.    For example, an employee of a medical billing, equipment and supply

services company based in Tennessee ("Victim 1") spoke with LIPSITZ over the phone and

asked whether SGD could fulfill an order of 30,000 surgical facemasks on behalf of her

company.    LIPSITZ assured Victim 1 that SGD could process the order and anticipated

delivery within three days.    As a result, Victim 1 placed an order for 30,000 surgical

facemasks on or about March 20, 2020, and received an order confirmation email soon

thereafter.    When Victim 1's company did not receive the surgical facemasks as promised,

---

[5]  The information described in this paragraph is based on records that the USPS
provided to law enforcement voluntarily and not pursuant to subpoena.

LIPSITZ, among other things, declined Victim 1's attempts to cancel the order, provided excuses regarding shipping and manufacturing issues, and later disclosed to Victim 1 that the facemasks were being flown to the United States from China.  Victim 1's company did not receive the surgical facemasks until about three weeks after placing the order.

27.     The defendant KEVIN JAY LIPSITZ also made false promises of speedy delivery to a radiologist who wanted to purchase disposable surgical facemasks for his radiology practice in New Jersey ("Victim 2").   On or about March 30, 2020, Victim 2 placed an order for 10,000 disposable surgical facemasks from the Website based in part on LIPSITZ's false promise that he would ship the masks quickly.    While LIPSITZ provided Victim 2 with a tracking number from a shipping company shortly after he placed his order, the shipping company's website merely showed that a shipping label had been printed. Victim 2 did not receive the masks until April 17, 2020, nearly three weeks later.

28.     On or about April 3, 2020, an individual in Michigan ("Victim 3") placed an order for 1,000 disposable surgical facemasks from the Website, to be used by employees of the telecommunications company for which the individual worked.   At the time of Victim 3's order, the Website advertised disposable surgical facemasks as being in stock and available for next-day shipping; Victim 3 would not have ordered the facemasks if he had understood that these statements were false.   When Victim 3 did not receive the facemasks in a timely fashion, he attempted to contact SGD by phone and email several times but never received a response.   Victim 3 did not receive the masks until several weeks after placing his order.

29.     The defendant KEVIN JAY LIPSITZ also made exaggerated or misleading claims that certain of the PPE he was selling was medical-grade quality.   For

instance, from at least early April 2020 until late May 2020, the Website advertised 50-pack

boxes of disposable surgical facemasks using the words "medical" and "respirator," as seen

here:



During this period, the product description for this item also used the phrases "Disposable

Ultimate 3-Play Protect Face Mask Virus Flu Medical Face Mask" and "Filter respirator

mask helps decrease the transmission of viruses and germs."    However, disposable surgical

facemasks are not "respirators" and by definition are not designed to filter out small airborne

particles.    By using the term "respirator" to describe the disposable surgical facemasks

offered for sale on the Website, LIPSITZ misleadingly exaggerated the effectiveness of such

items.

        30.      Moreover, the defendant KEVIN JAY KIPSITZ knew the disposable

surgical facemasks sold on the Website were not "medical" grade.    In early and mid-April

2020, LIPSITZ received a large number of bulk shipments of surgical masks at his personal

residence that were described in shipping documents as "non-medical disposable masks."

But at least until late May 2020, the product title for surgical facemasks on the Website used

the term "medical," suggesting that the items were appropriate for use in healthcare settings such as hospitals. It was not until late May or early June 2020 that LIPSITZ removed the word "medical" from the product title for disposable surgical facemasks sold on the Website and changed the description to "non-medical."

31. The defendant KEVIN JAY LIPSITZ's misrepresentations regarding inventory and shipping speed were material to consumers in making their decisions to purchase PPE from LIPSITZ. The COVID-19 pandemic has caused many members of the public to seek out PPE as quickly as possible. In that environment, the Website's advertisements of in-stock inventory and fast, next-day shipping was material information that consumers relied on in deciding to order PPE from the Website, and many customers would not have ordered PPE from the Website absent such misrepresentations. Ultimately, LIPSITZ's failure to ship PPE to customers on the promised timetable deprived many customers of the benefits that they reasonably anticipated they would receive by ordering from the Website.

WHEREFORE, your deponent respectfully requests that an arrest warrant issue for the defendant KEVIN JAY LIPSITZ, so that he may be dealt with according to law. I further request that this affidavit and the arrest warrant be filed under seal as premature disclosure of this application would give the defendant an opportunity to destroy evidence,

harm or threaten victims or other witnesses, change patterns of behavior, notify confederates

and flee or evade prosecution.

_____
ELIZABETH A. KUDIRKA
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone this
7th day of July, 2020

/s Roanne L. Mann
_____

THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 20 MJ 509 |
| | ) | |
| KEVIN JAY LIPSITZ | ) | |
| | ) | |
| | ) | |
| _Defendant_ | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_   KEVIN JAY LIPSITZ                                    ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment     ❑ Superseding Indictment     ❑ Information     ❑ Superseding Information     ☑ Complaint
❑ Probation Violation Petition     ❑ Supervised Release Violation Petition     ❑ Violation Notice     ❑ Order of the Court

This offense is briefly described as follows:

Title 18, United States Code, Section 1343 (wire fraud)
Title 50, United States Code, Sections 4512 and 4513 (price gouging)

Date:    07/07/2020

/s Roanne L. Mann
_____
_Issuing officer's signature_

City and state:    Brooklyn, New York

U.S.M.J. Roanne L. Mann
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____, and the person was arrested on _(date)_ _____ at _(city and state)_ _____. |
| Date: _____ |
| _____ _Arresting officer's signature_ |
| _____ _Printed name and title_ |

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

_____